_____

SO ORDERED,

*Katharine M. Samson*

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
Date Signed: January 28, 2015

The Order of the Court is set forth below. The docket reflects the date entered.
_____

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: CHARLES W. DOWDY | CASE NO. 11-03329-KMS |
| DEBTOR | CHAPTER 11 |

### MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Assume Executory Contracts, (Dkt. No. 436), filed by the debtor, Charles W. Dowdy ("Dowdy"); the Response to the Debtor's Motion to Assume Executory Contracts, (Dkt. No. 443), filed by the American Society of Composers, Authors and Publishers, et. all ("ASCAP"); the Trial Brief, (Dkt. No. 489), filed by ASCAP; the Debtor's Response to ASCAP's Trial Brief (the "Response"), (Dkt. No. 513), filed by Dowdy; ASCAP's Rebuttal to Debtor's Response to ASCAP's Trial Brief (the "Rebuttal"), (Dkt. No. 545), filed by ASCAP; Debtor's Surreply to ASCAP's Rebuttal to Debtor's Response to ASCAP's Trial Brief (the "Surreply"), (Dkt. No. 555), filed by Dowdy; and ASCAP's Response to Debtor's Surreply to ASCAP's Rebuttal to Debtor's Response to ASCAP's Trial Brief (the "Response to Surreply"), (Dkt. No. 558), filed by ASCAP. Having considered the pleadings, exhibits attached thereto, and the record, the Court finds that the motion to assume should be granted and states

the following:[1]

## I. Jurisdiction

The Court has jurisdiction over the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (O).

## II. Factual Background

On May 23, 2011, to resolve copyright infringement litigation pending against them in the District Court for the Southern District of Mississippi, Southwest Broadcasting, Inc. ("Southwest") and Dowdy entered into a stipulation and settlement agreement with ASCAP. (Dkt. No. 443, Exh. A). The agreement provides for the resolution of all claims ASCAP had against Southwest and Dowdy for licensing fees and copyright infringement through February 28, 2011. (*Id.*, Exh. A at 2). These claims were resolved by Southwest and Dowdy's agreement to pay $400,000.00, plus 4.10% interest over a period of five years, in accordance with the agreed-upon schedule contained in the settlement agreement. (*Id.* at 3–4). Contemporaneously with the execution of the stipulation, Southwest, North Shore Broadcasting Company, Inc. ("North Shore"), Brookhaven Broadcasting, Inc. ("Brookhaven"), and Southeastern Broadcasting, Inc. ("Southeastern") executed licensing agreements with ASCAP. (*Id.* at 4–5). On September 22, 2011, Dowdy filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[2] (Dkt. No. 1). Prior to the filing of his petition, Dowdy dissolved both

---

[1] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent the Court lacks the constitutional authority to enter final judgment, the following constitutes its proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1).

[2] "Bankruptcy Code" or "Code" refers to the United States Bankruptcy Code located at Title 11 of the United States Code. All Code sections hereinafter will refer to the Bankruptcy Code unless specifically noted otherwise.

Southwest and Brookhaven, transferred the assets of each company to himself, and agreed to assume each company's liabilities.[3]

On July 2, 2014, Dowdy filed a motion to assume the licensing agreements that were executed by Southwest and Brookhaven contemporaneously with the settlement agreement. (Dkt. No. 436). In his motion, Dowdy acknowledges that there are post-petition defaults related to the licensing agreements and he proposes to cure those defaults by the effective date of the plan. (*Id.* at 2 ¶ 8). Dowdy also proposes to cure the pre-petition defaults in four monthly installments, commencing upon the effective date of the plan. (*Id.*). The motion to assume does not, however, provide for the payment of the $400,000.00 settlement amount, nor does it propose to cure any default in payments due under the terms of the settlement. (Dkt. No. 436). In Dowdy's view, the settlement agreement is not executory and is separate from the licensing agreements, which are executory.

ASCAP filed a response to the motion to assume. (Dkt. No. 443). ASCAP does not object to Dowdy's proposed cure of the pre-petition and post-petition defaults under the licensing agreements. (*Id.*). Instead, ASCAP argues that the stipulation and settlement agreement encompasses the licensing agreements and both obligations constitute a single executory contract, which must be either assumed or rejected in its entirety. (*Id.*). In ASCAP's view, the

---

[3] ASCAP appears to complain of this turn of events in its trial brief; however, ASCAP opposed the United States Trustee's motion to dismiss Dowdy as a debtor for combining his assets with Southwest and Brookhaven and filing an impermissible joint petition for himself, Southwest, and Brookhaven. (Dkt. No. 337). In its objection to dismissal, ASCAP argued that dismissal or conversion "would be unfair and highly prejudicial to the ASCAP Plaintiffs." (Dkt. No. 337 at 3, ¶ 7). The motion to dismiss was denied for the reasons stated in the Court's Memorandum Opinion and order. (Dkt. No. 349). Accordingly, ASCAP is judicially estopped from now complaining of the dissolution. *See* New Hampshire v. Maine, 532 U.S. 742 (2001) ("'Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'") (quoting *Davis v. Wakelee,* 156 U.S. 680, 689 (1895)).

licensing agreements are part of a global settlement agreement, which includes both the $400,000.00 payout to resolve its past claims against Dowdy and Southwest as well as the regular payments under the licensing agreements going forward. (*Id.* at 2, ¶ 3). Accordingly, ASCAP asserts that Dowdy must either assume or reject the entire stipulation and settlement agreement and cure the defaults under both the licensing agreements and the $400,000.00 settlement agreement in order to assume. (*Id.* at 7–8).

ASCAP filed a trial brief, related both to its response to Dowdy's motion to assume and its objection to the second amended plan. (Dkt. No. 489). In its trial brief, ASCAP asserts that there are three main issues that must be resolved: whether the stipulation and settlement agreement is an executory contract; whether the claim of the Sander's Trust can be voted as an unsecured claim; and whether Allistar Watt's vote may be counted. (*Id.*). The only issue remaining is whether the stipulation and settlement agreement is an executory contract.[4]

### III. Discussion

#### A. Section 365

Section 365 of the Bankruptcy Code provides that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). These powers to assume or reject may also be exercised by a debtor-in-possession. 11 U.S.C. § 1107(a). Where, as here, "there has been a default in an executory contract . . . of the debtor, the [debtor-in-possession] may not assume such contract or lease, unless" the debtor-in-possession "cures, or provides adequate assurance that [he] will promptly

---

[4] In a footnote contained in its response to Dowdy's Surreply, ASCAP concedes that the Court's order allowing the reclassification of the claim of the Sanders Trust from secured to unsecured "may have rendered moot" both of the other issues raised in its trial brief. (Dkt. No. 558 at 3 FN 1). The Court agrees that these issues are now moot and therefore does not reach them in this order.

cure, such default . . ."; "compensates, or provides adequate assurance that [he] will promptly compensate, a party other than the debtor to such contract or lease, for any pecuniary loss to such party resulting from the default; and" "provides adequate assurance of future performance under such contract or lease." 11 U.S.C. § 365(b)(1)(A)–(C).

The Code does not define the term "executory contract," but "an executory contract is usually defined as '[a] contract under which debtor and nondebtor each have unperformed obligations and the debtor, if it ceased further performance, would have no right to the other party's continued performance.'" *In re Texas Wyoming Drilling, Inc.*, 486 B.R. 746, 753–54 (Bankr. N.D. Tex. 2013) (citing Black's Law Dictionary (9th ed. 2009); 3 Collier on Bankruptcy ¶ 365.02[2][a]). Further, "an executory contract must be assumed or rejected in its entirety." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.,* 83 F.3d 735, 741 (5th Cir. 1996). But, "[i]f a single contract contains separate, severable agreements[,] the debtor may reject one agreement and not another." *Id.* (citing *In re Cutters,* 104 B.R. 886, 889 (Bankr. M.D. Tenn. 1989)). Thus, if the entire stipulation and settlement agreement is a single executory contract, Dowdy must promptly cure or provide adequate assurance for the prompt cure of both the default on the $400,000.00 settlement as well as the default under the licensing agreements. But, if the licensing agreements are separate from the rest of the stipulation and settlement agreement, Dowdy would only have to cure or provide adequate assurance for the prompt cure of the default under the licensing agreements he seeks to assume.

### B. Whether the Stipulation and Settlement Agreement Constitutes a Single Executory Contract for the Purposes of § 365

The terms of the contract, as interpreted under state law, determine whether the obligations in an agreement are severable. SP1-Monograph 1, Collier on Bankruptcy

§ 8[1][a][iii] (Alan N. Resnick & Henry J. Somme reds., 16th ed.) (citing *In re Cafeteria Operators, L.P.,* 299 B.R. 384, 389 (Bankr. N.D. Tex. 2003)). Under Mississippi law, "[a] severable contract 'includes two or more promises, each of which can be enforced separately, so that failure to perform one of the promises does not put the promisor in breach of the entire contract.'" *Jackson Motor Speedway, Inc. v. Ford,* 914 So. 2d 779, 784 (Miss. Ct. App. 2005) (quoting Black's Law Dictionary 264 (7th ed. 2000)). And, "[w]hether a contract is severable is a question of intention, to be determined from the language which the parties have used, and the subject matter of the agreement." *Id.* (citing *Mariana v. Hennington,* 229 Miss. 212, 90 So. 2d 356, 364 (1956)). Thus, the Court must look to the language of the agreement to discern whether it contains severable promises.

> The stipulation and settlement agreement provides that:
>
> Defendants, jointly and severally, agree to pay to ASCAP . . . the sum of $400,000.00 plus interest at the rate of 4.10% per annum . . . in full settlement of (i) any and all claims ASCAP has or may have for license fees owed . . . by Defendants for all periods through February 28, 2011; and (ii) all claims arising out of the alleged unauthorized public performance of ASCAP member's copyrighted works by Defendants for all periods preceding the Effective Date.

(Dkt. No. 443, Exh. A at 3, ¶ 1). The agreement also provides that:

> Contemporaneously with the execution of this Stipulation, Southwest, together with North Shore Broadcasting Company, Inc., Brookhaven Broadcasting, Inc., and Southeastern Broadcasting, Inc. shall sign and return to ASCAP Local Radio Station License Agreements. . . for the interim license period beginning March 1, 2011. In addition to and separate from Defendants' payment obligations set forth . . . above, Defendants will pay to ASCAP in full, and on a timely basis, the Station's monthly license fees as determined in accordance with the Stations' ASCAP licenses in effect at that time . . . .

(*Id.* at 4–5, ¶ 3). In the event of the Defendants' default in payments under either the settlement agreement or the licensing agreements, the agreement provides that the Plaintiffs would give

written notice of the default to the Defendants, who then had 30 days to cure. (*Id.* at 5–6, ¶ 6). If the Defendants fail to cure within 30 days, ASCAP may apply to the district court for the entry of the consent judgment—executed contemporaneously with the settlement agreement—and also apply to the district court for the reinstatement of the copyright infringement litigation against Dowdy individually. (*Id.*). Finally, the agreement provided for the immediate dismissal of the litigation, without prejudice, and states that the litigation would be dismissed with prejudice "[u]pon full payment of the [$400,000.00] Settlement Amount." (*Id.* at 6–7, ¶¶ 7, 8).

ASCAP relies upon *Viacom Latino Americana, Inc. v. Three Star Corp. (In re Three Star Telecast, Inc.)*, 93 B.R. 310 (D. Puerto Rico 1988) for support in its assertion that the stipulation and settlement agreement, together with the licensing agreements, constitutes a single executory contract for the purposes of § 365. In *Viacom*, the court found that a stipulation and settlement agreement constituted a single executory contract. *Id.* at 312. But, significantly, the agreement in question in *Viacom* integrated the payments for past-due debt under an existing licensing agreement together with ongoing payments under the agreement into one combined payment. That agreement provided that Three Star would pay one monthly sum to Viacom, and a portion of that sum would be credited to the current licensing cost of the television show, while the rest of the sum would be credited to Three Star's outstanding debt. *Id.* Essentially, Three Star was allowed to continue airing the television show while curing its default under the existing licensing agreement and its single payment to Viacom was divided between curing the existing debt and paying the ongoing licensing fee. Accordingly, the *Viacom* court found that the entire settlement agreement constituted one executory contract for the purposes of assumption or rejection under § 365.

By contrast, in this case the stipulation and settlement agreement is distinct from the licensing agreements. First, the stipulation and settlement agreement appears to do two things: settle ASCAP's then-existing claims against Dowdy and Southwest for prior copyright infringement and for licensing fees and prevent future claims for licensing fees and copyright infringement by providing for the establishment of separate licensing agreements for all of the stations involved. Indeed, unlike *Viacom,* no licensing agreements were in place between ASCAP and any of the radio stations prior to the execution of the settlement agreement. Next, the licensing agreements themselves are not part of the settlement agreement; rather, they were purposely executed separately.[5] And, pursuant to the agreement, payment under the licensing agreements is to be made separately from payment of the $400,000.00 settlement. (Dkt. No. 443, Exh. A at 5, ¶ 3). Further, while default under the licensing agreements constitutes breach of the settlement agreement, default under the settlement agreement does not constitute breach of the licensing agreements, nor does it provide ASCAP with any recourse aside from reinstituting the infringement litigation against Dowdy personally and requesting the court enter the separately-executed consent judgment. Simply put, Dowdy's default under the settlement agreement does not nullify the licensing agreements. Thus, the licensing agreements may be separately enforced and should be considered separate contracts for the purposes of § 365.

## IV.    Conclusion

The Court finds that the licensing agreements constitute separate contracts for the purposes of § 365. They are not contained in the stipulation and settlement agreement; rather,

---

[5] The licensing agreements also contain integration clauses, stating that "[t]his agreement (including documents incorporated by reference) constitutes the entire understanding between the parties . . . ." (E.g. Dkt. No. 436, Exh. A at 7, ¶ D).

they were executed separately, and payment under them is intentionally segregated from payment towards the $400,000.00 settlement. Further, breach of the settlement agreement does not constitute breach of the licensing agreements, nor does it nullify the licensing agreements. Accordingly, the licensing agreements are severable and may be assumed separately from the settlement and stipulation agreement.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion to Assume Executory Contracts, (Dkt. No. 436), is **GRANTED.**

## END OF OPINION ##